## PLATT v. HITCHCOCK COUNTY, NEB.

### (Circuit Court of Appeals, Eighth Circuit. August 21, 1905.)

#### No. 2,133.

1. MUNICIPAL BONDS—INTEREST PAID MANY YEARS—VALIDITY.

Where innocent persons are induced to invest their money in the bonds or obligations of a municipality or quasi municipality, by the authorized recitals of its officers and by the commercial credit given to them by the payment of interest thereon for many years, they should be sustained, unless some insuperable legal obstacle prevents this course.

[Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, §§ 1982, 1985.

Bona fide purchasers of municipal bonds, see note to Pickens Tp. v. Post, 41 C. C. A. 6.]

2. SAME—RECITALS—ESTOPPEL.

The recitals of the officers of a municipal or quasi municipal corporation, who are invested with the power to perform a precedent condition to the issue of negotiable bonds and with authority to determine when that condition has been performed, that they have been issued in pursuance of the Constitution or statute which authorizes their issue, precludes inquiry, as against an innocent purchaser for value, as to whether or not the precedent condition challenged had been performed before the bonds were issued.

3. SAME.

Where, under any state of facts or circumstances which might have existed, or which the board or officers who issued the bonds and made the recital might have caused lawfully to exist, the bonds could have legally issued, a recital therein that they have been issued under authority of or in conformity to the law estops the municipality or quasi municipality, as against an innocent purchaser of the bonds for value, from asserting their falsity to defeat them.

4. SAME.

A municipality, quasi municipality, or corporation, and its officers, who by the appearance and recital of the regularity of the issue of its bonds or obligations induces innocent purchasers to invest in them, is estopped from denying their apparent validity upon the ground that in the proceedings preliminary to their execution its officers failed to comply with some requirement or rule of action relative to the mere time or manner of their procedure, with which they might have lawfully complied, but which they disregarded.

5. COUNTIES—PRECINCT BONDS—COUNTY OFFICERS—AUTHORITY, RECITALS, AND ISSUANCE.

The county officers of counties in Nebraska are invested with authority to issue county bonds for precinct indebtedness and to make the customary recitals therein.

6. SAME—PRECINCT BONDS—RECITAL OF COUNTY OFFICERS—POWER TO MAKE—CONCLUSIVENESS.

A board of county commissioners in Nebraska had authority to issue precinct bonds of the county to an amount not exceeding 10 per cent. of the last preceding assessment of the taxable property of the precinct. It issued bonds for $18,000, and recited that they were emitted under and by authority of the laws of the state of Nebraska which were specified. If the assessment of 1889 was the last preceding assessment on June 17, 1890, the bonds were within the limitation. If that of 1890 was the last assessment, they exceeded it. The board had completed the assessment of 1890 on June 12, 1890, but it had the power until July 10, 1890, to reconsider, modify, and again complete it. *Held*, inasmuch as the officers who made the recital were invested with the power on June 17, 1890, to make

139 F.—59

the assessment of 1889 the last preceding assessment, and to ascertain, determine, and recite that this had been or would be done, their recital to that effect conclusively estops the county, as against an innocent purchaser of the bonds or coupons, from asserting its falsity to defeat them.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Nebraska.

Frederick Shepherd, for plaintiff in error.

F. H. Gaines (F. I. Foss, on the brief), for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

SANBORN, Circuit Judge. This is an action upon coupons cut from precinct bonds of Hitchcock county, in the state of Nebraska. which were issued on July 1, 1890, upon a favorable vote of the electors of the precinct of Culbertson at an election held on June 17, 1890. There was a directed verdict and judgment for the county.

The precinct and county were authorized to issue these bonds to an amount not exceeding 10 per cent. of the assessed value of the taxable property of the precinct at the last assessment. Comp. St. Neb. 1889, c. 45, § 14. The amount of this issue was $18,000, and this fact appeared upon the face of each bond. The defense was that the bonds increased the bonded debt of the precinct above 10 per cent. of the assessed valuation of the taxable property in it at the last preceding assessment. If the last preceding assessment was that of 1890, the increased debt exceeded the statutory limitation; but, if it was that of 1889, it was was within it. Counsel for the county contend that the date of the election, June 17, 1890, is the date which conditions the question whether the assessment of 1889 or that of 1890 was the last preceding assessment. Chicago, B. & Q. Ry. Co. v. Village of Wilber, 63 Neb. 624, 627, 88 N. W. 660; State v. Babcock, 24 Neb. 640, 642, 39 N. W. 783. The bonds appear to have been issued upon the day of their date, July 1, 1890. It is immaterial to the decision in this case whether the date which conditions this issue is June 17, 1890, July 1, 1890, or some earlier date. For this reason it is conceded for the purposes of this decision, but it is not decided, that the date of the election is the determining time.

The method of making an assessment, prescribed by the statutes of Nebraska, required the local assessors to prepare lists of property and of its estimated value, and to return them to the board of county commissioners. The statutes of that state empowered and required this board to hold a session of not less than 3 nor more than 30 days, commencing on June 10, 1890, for the purpose of equalizing the local assessments of that year. They authorized this board to add to these assessments and to modify them, and they provided that upon the last day of its sitting as a board of equalization it should levy the necessary taxes for the year. Comp. St. Neb. 1893, c. 77, §§ 70, 77. The record of the board of county commissioners shows that it met and acted as a board of equalization on June 10, June 11, and June 12, 1890, that on the day last named it made a levy

of taxes for the year, and that on that day it adjourned to meet on June 16, 1890. The record in the case before us does not disclose what the record of the board on June 16th or any subsequent day portrays.

The Constitution of the state of Nebraska (article 14, § 2) declares that no bonds or evidences of debt of the character of those under consideration shall be valid, unless they shall have a certificate indorsed upon them, signed by the Auditor of Public Accounts and the Secretary of State, to the effect that they were issued according to law. The statutes of the state require the proper officers of the county to make and transmit to the Auditor of Public Accounts, as a basis for this certificate, a certified written statement of all the proceedings relative to the issue of bonds of this character and of the assessed valuation and the actual bonded indebtedness of the precinct. Comp. St. Neb. 1893, c. 9, § 20. The county commissioners and county clerk of Hitchcock county made and transmitted a certified statement of the proceedings relative to the issue of these bonds pursuant to this statute, in which they declared that:

"The taxable valuation of the precinct for county and state purposes for the year next preceding, being the year 1889, is $216,678, and there is $3,000 bonded indebtedness of said Culbertson precinct."

According to this statement the bonded debt, after the issue of the bonds in question, was within the statutory limitation, and the bonds were legally issued. Thereupon the Secretary of State and Auditor of Public Accounts indorsed upon each bond a certificate that they had examined the certified statement sent to them by the county commissioners of Hitchcock county, and that this statement showed that the bond was issued pursuant to law. The bonds themselves contain a recital that they were "issued under and by authority of the laws of the state of Nebraska found in" certain chapters of the publications of those laws there specified. A recital in municipal bonds that they have been issued "in pursuance of," or "in conformity with," or "by virtue of," or "by authority of," the statute or laws which authorize their issue, is in legal effect a recital that the conditions precedent to a valid issue have been performed. City of Evansville v. Dennett, 161 U. S. 434, 443, 16 Sup. Ct. 613, 40 L. Ed. 760; City of Huron v. Second Ward Sav. Bank, 86 Fed. 272, 279, 30 C. C. A. 38, 45, 49 L. R. A. 534.

The bonds were issued in 1890, and the county paid the interest upon them annually until the year 1900. The plaintiff purchased the coupons in suit for value, without notice of any defense to them or defect in them, in reliance upon the recital in the bonds. Where innocent purchasers are induced to invest their money in the bonds or obligations of a municipality or quasi municipality by the authorized recitals or statements of its officers to the effect that they were issued by authority of the law and by the commercial credit given to them by the payment of interest for a series of years, reason and justice alike demand that the obligors should be estopped from denying these recitals to defeat the bonds and that their payment should be enforced, unless some insuperable legal obstacle has

intervened to prevent this result. Evansville v. Dennett, 161 U. S. 434, 446, 16 Sup. Ct. 613, 40 L. Ed. 760.

Counsel for the county insist that it is not estopped by the recital which these bonds contain from denying their validity, because the board of county commissioners was without power to issue them, and this fact appeared by the record of the board, which showed that the assessment of 1890 was completed on June 12, 1890, five days before the election on June 17, 1890, which authorized the issue. For the purposes of this decision it will be conceded that the assessment of 1890 was completed, and that the levy based upon it was made, on June 12, 1890. But the record of the board discloses the further fact that it did not adjourn sine die on that day, but that it adjourned to meet again on June 16, 1890, and the statutes of Nebraska invested this board with plenary power to make void, to modify, and to complete the assessment of 1890 at any time between June 9th and July 10th in that year. The argument of counsel for the county would be persuasive, and would find support in the authorities they cite (Nesbit v. Riverside Independent District, 144 U. S. 610, 12 Sup. Ct. 746, 36 L. Ed. 562; Sutliff v. Lake County Commissioners, 147 U. S. 230, 13 Sup. Ct. 318, 37 L. Ed. 145; Lake County v. Graham, 130 U. S. 674, 9 Sup. Ct. 654, 32 L. Ed. 1065; Dixon Co. v. Field, 111 U. S. 83, 94, 4 Sup. Ct. 315, 28 L. Ed. 360), if the assessment of 1890 had been beyond the power and control of the board when the election of June 17, 1890, was held. Inasmuch, however, as that board had the power to reconsider its action and to change and finally complete the assessment of 1890 after that day, and thereby to make the last assessment preceding the day of election that of 1889, instead of 1890, it was not without authority on June 17, 1890, to issue these bonds. If it failed to modify and complete the assessment of 1890 after June 17th and before its authority ceased on July 10, 1890, so as to make the assessment of 1889 the last preceding assessment, and for that reason the bonds were not legally issued, this defect resulted, not from a lack of lawful power in the board to issue the bonds, but from a defective exercise of the power with which the Constitution and the laws of the state had invested it. And here is the line of demarcation between the cases cited for the county in the action at bar and those of a like character in which the recitals in the bonds raise a conclusive estoppel from denying their truth in favor of one who has innocently purchased the bonds in reliance upon it.

The rule of law upon which the first class of decisions rests is that recitals in municipal bonds by the representative body that issues them, to the effect that all the requirements of the laws with reference to the issue have been complied with, will not estop the municipality from proving as against a bona fide purchaser that the representative body had no power to issue them, where no act of the representative or constituent body could make the issue lawful at the time it was made, and this fact appears from the Constitution and statute upon which the bonds are issued, the public records referred to therein, and the bonds the purchaser buys. Dixon Co. v.

Field, 111 U. S. 83, 94, 4 Sup. Ct. 315, 28 L. Ed. 360; National Life Ins. Co. v. Board of Education, 62 Fed. 791, 10 C. C. A. 650. But the case at bar and others of a like character are controlled by a different rule, and that is that the recitals in municipal bonds, by the officers or the representative body invested with power to perform a precedent condition to their issue and with authority to determine when that condition has been performed, that they have found that all the requirements of law necessary to authorize the issue of the bonds have been fully complied with, precludes inquiry, as against an innocent purchaser for value, whether or not the precedent condition challenged had been performed before the bonds were issued. Clapp v. Otoe County, 45 C. C. A. 579, 587, 104 Fed. 473, 481; City of Huron v. Second Ward Sav. Bank, 86 Fed. 272, 279, 30 C. C. A. 38, 45, 49 L. R. A. 534; National Life Ins. Co. v. Board of Education, 62 Fed. 778, 792, 793, 10 C. C. A. 639, 651, 652; School District v. Stone, 106 U. S. 183, 187, 1 Sup. Ct. 84, 27 L. Ed. 90; Town of Coloma v. Eaves, 92 U. S. 484, 23 L. Ed. 579; Commissioners v. Beal, 113 U. S. 227, 5 Sup. Ct. 433, 28 L. Ed. 966; City of Cairo v. Zane, 149 U. S. 122, 13 Sup. Ct. 803, 37 L. Ed. 673.

The later decisions of the courts lead to the conclusion that where, under any state of facts or circumstances which might have existed, or which the board or officers who issued the bonds and made the recital might have lawfully caused to exist, the bonds could have been legally issued, a recital therein that they have been so issued estops the municipality or quasi municipality, as against an innocent purchaser of the bonds for value, from asserting its falsity to defeat them. Evansville v. Dennett, 161 U. S. 434, 443, 446, 16 Sup. Ct. 613, 40 L. Ed. 760; E. H. Rollins & Sons v. Board of Commissioners, 26 C. C. A. 91, 98, 80 Fed. 692, 699; City of Huron v. Second Ward Sav. Bank, 86 Fed. 272, 279, 30 C. C. A. 38, 45, 49 L. R. A. 534. It is also a general rule, established by repeated decisions, that a municipality, a quasi municipality, or a corporation and its officers, who by the apparent legality of their obligations or by recitals of their validity have induced innocent purchasers to invest in them, are estopped from denying their legality on the ground that in some of the preliminary proceedings which led to their execution, or in their execution itself, they failed to comply with some law or rule of action relative to the mere time or manner of their procedure, with which they might have lawfully complied, but which they carelessly disregarded. Speer v. Board of Commissioners, 88 Fed. 749, 758, 32 C. C. A. 101, 111; Clapp v. Otoe Co., 45 C. C. A. 579, 587, 104 Fed. 473, 481; Union Pac. Ry. Co. v. Chicago, R. I. & P. Ry. Co., 2 C. C. A. 174, 239, 241, 51 Fed. 309, 326, 328; Sioux City Terminal Railroad & Warehouse Co. v. Trust Co. of North America, 27 C. C. A. 73, 86, 82 Fed. 124, 137; Board of Commissioners v. Sherwood, 11 C. C. A. 507, 510, 64 Fed. 103, 108; City of Huron v. Second Ward Sav. Bank, 30 C. C. A. 38, 86 Fed. 272, 49 L. R. A. 534.

There were facts and circumstances which the board of county commissioners of Hitchcock county might have lawfully caused to exist under which these bonds could have been legally issued

upon the election of June 17, 1890—the facts that the board intended to, and before July 10, 1890, did, change and then complete the assessment of 1890, so that the assessment of 1889 became on the day of the election the last preceding assessment. The board failed to regularly issue the bonds in this case, not because it was without lawful power to do so, but because it erred in the time and manner of taking its proceedings, because it completed the assessment of 1890 before June 17, 1890, when it had plenary authority to complete it after that date and thereby to make the issue of the bonds lawful and regular. The Constitution and statutes granted to this board the power, and imposed upon it the duty, to ascertain, determine, and certify whether the assessment of 1889 or that of 1890 was the last preceding assessment. Clapp v. Otoe Co., 45 C. C. A. 579, 104 Fed. 473. They empowered this board to make either the one or the other of them such. This board alone had the authority, and its members alone had the knowledge, on June 17, 1890, which one it would make the last assessment preceding that day. If it had certified that the assessment of 1890 was the last, it might still have changed and completed that assessment at any time before July 10, 1890, so that its certificate to that effect would have been false. It ascertained, determined, and recited that the assessment of 1889 was the last preceding one; a condition that it had lawful power to bring to pass and to keep in existence; a statement the truth of which was peculiarly within its knowledge, and which it had legal authority to make either true or false. In reliance upon this determination and recital the plaintiff invested his money and purchased his coupons, and the law does not permit the county to deny the truth of this recital in order to defeat them.

The judgment below must be reversed, and the case must be remanded to the Circuit Court, with instructions to grant a new trial. It is so ordered.