**DEKELBAUM v. LLOYD.**

No. 241.

Municipal Court of Appeals for the District of Columbia.

Jan. 12, 1945.

Edward A. Aaronson, of Washington, D. C., for appellant.

Lester Wood, of Washington, D. C. (Paul D. Taggart, of Washington, D. C., on the brief), for appellee.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

RICHARDSON, Chief Judge.

Appellee, plaintiff below, in her complaint alleged that in February, 1942, she rented certain premises from defendant, appellant here, for the sum of $100 per month; that the maximum rent ceiling applicable was $80 per month; that defendant should have rebated to plaintiff $20 monthly, beginning February, 1942, but in violation of Section 10 of the District of Columbia Emergency Rent Act [1] defendant received $100 monthly until March, 1943, a period of thirteen months, amounting to $260 excess rent. Plaintiff claimed judgment for $520, being double the excess rent, and attorney's fee.

Defendant denied that a rent ceiling existed during said period and counter-claimed in the sum of $240 for unpaid rent from October 5, 1943, to January 4, 1944, when plaintiff removed from the premises.

The court found against defendant for the $520 claimed, plus a $75 attorney's fee; against plaintiff for $240 unpaid rent. Judgment was entered against defendant for $355, and he has appealed.

At the trial the following facts were undisputed:

Defendant had himself occupied the premises for a number of years prior to plaintiff's tenancy which commenced February 5, 1942. Whether a maximum rent ceiling then existed turned upon the proper construction of Section 2(1) (c) of the Emergency Rent Act which provides: "For housing accommodations not rented on January 1, 1941, nor within the year ending on that date, the rent and service generally

[1] Act of Dec. 2, 1941, 55 Stat. 788, Sections 1 to 11 now appearing as Sections 45—1601 to 45—1611 (supplement) Code of 1940.

prevailing for comparable housing accommodations as determined by the Administrator."

Certain general orders issued by the Administrator of Rent Control applicable to the period in question are noted· in the margin.[2] No application was made by either landlord or tenant for determination of a rent ceiling, but on March 5, 1943, the Administrator in passing· upon an application of the tenant to require certain repairs to the premises issued the following order:

### Order

"That the landlord herein within 10 days after the effective date hereof make or cause to be made the repairs and replacement indicated or reasonably implied by the items set forth in Finding No. 2 above and that the maximum rent ceiling for premises 3526 T. St., N. W., is determined to be $80.00 per month, unfurnished, effective March 16, 1943."

From the effective date of said order, rent was paid at the rate of $80 per month until default occurred in payments due in the months of October, November and December, 1943. Plaintiff bases her right to recover the excess paid prior to the date of the order upon Section 10 of the Rent Act, the material parts of which follow: "(a) If any landlord receives rent * * * in violation of any provision of this chapter, or of any regulation or order thereunder prescribing a rent ceiling * * * the tenant paying such rent * * * may bring suit to rescind the lease or rental agreement, or, in case of violation of a maximum-rent ceiling, an action for double the amount by which the rent paid exceeded the applicable rent ceiling * * * or for $50, whichever is greater in either case, plus reasonable attorneys' fees and costs as determined by the court."

Here the determination by the Administrator of a maximum rent ceiling of $80 per month, quoted above, was made prospective. Plainly the receipt of excess rent, if any, was not in violation of an order "prescribing a rent ceiling." If a rent ceiling existed prior to the issuance of the Administrator's order it could only be because Section 2(1) (c), supra, automatically prescribed a definite rent ceiling. This we.held in Moore v. Coates, Mun.App.D.C., 40 A.2d 68, was not the intent or effect of the section.[3] In Moore v. Coates, supra, in considering the form of the Administrator's order it· seemed clear that it was intended to be prospective only. The order in the present case, dated March 5th, to be effective March 16, confirms our understanding of the Administrator's interpretation of the section and this, should doubt exist as to the construction of the section, "is entitled to persuasive weight." [4]

---

[2] General Order No. 1

(Relating to Section 2(c) of the Act.)
For housing accommodations not rented on January 1, 1941, nor within the year ending on that date, the Administrator, until further notice, will assume—but not concede—that the first rent collected by the landlord for such housing accommodations is fair and reasonable. Such landlord should not continue to rely upon this assumption, however, but should prepare and file a separate petition for each unit, seeking determination by the Administrator of a maximum-rent ceiling covering such housing accommodations.

General Order No. 6
* : *
Ordered, effective November 1, 1942, that the maximum· rent ceiling is hereby determined to be zero on all housing accommodations within the District of Columbia not rented on January 1, 1941, nor within the year ending on that date for which no maximum rent ceiling determination has been made by the Administrator unless and until a petition or application for such a determination shall have been filed in this office.

For all such housing accommodations already rented on the date of this order, such application shall be filed on or before November 1, 1942. For all such housing accommodations not already rented on the date of this order, such application shall be filed before any future tenancy begins. Upon the filing of such application and until the Administrator shall act upon the application and determine otherwise, the first rent received since January 1, 1941 shall be the maximum rent ceiling and the services then included shall be the minimum service standard for such housing accommodations.
* * *
And it is further ordered, that General Order No. 1 is superseded by this order.

[3] Subsequent to our decision, on Dec. 4, 1944, the Supreme Court in Claridge Apartments Co. v. Commissioner of Internal Revenue, 323 U.S. 141, 65 S.Ct. 172, at page 185, said: "Retroactivity, even where permissible, is not favored, except upon the clearest mandate."

[4] Goodman v. Bowles, Em.App., 138 F. 2d 917.

In the findings of the trial court it is stated that defendant "either willfully or negligently" failed to comply with the Administrator's orders requiring landlords to file applications for determination of a rent ceiling. The act specifically authorizes the Administrator to issue regulations, orders and "requirements." Sec. 7(a). Any person who "willfully" violates any regulation, order or requirement is subject upon conviction, to fine and imprisonment. Sec. 10(b). But the private action under Section 10(a) is limited to the receipt of rent in violation of the act; or of any provision or order thereunder prescribing a rent ceiling and finds no support in a failure, however contumacious, to comply with orders of a different character.

Since our opinion was rendered in Moore v. Coates, supra, the Emergency Court of Appeals in Womack v. Bowles, Em.App. 146 F.2d 497, in considering an amendment effective July 1, 1943, to Section 4(j) of the Rent Regulation for Housing under the National Defense Act, sustained the right to recover rents in excess of the maximum rent ceiling thereafter determined where unfurnished apartments having a maximum rent ceiling were later furnished and rented at a higher rate. The amendment provided that, within thirty days after such accommodations are first rented furnished, the landlord should file a registration; that if he failed, rent would be received subject to refund of any amount in excess of the "furnished" maximum rent ceiling afterwards fixed by the Administrator. The District of Columbia Emergency Rent Act has no such provision, nor has the Administrator promulgated a regulation or order of like effect. Consequently the Womack case is not an authority in the present proceeding.

Reversed.

CAYTON, Associate Judge (dissenting).

I think the judgment should be affirmed for reasons set out in my separate opinion in Moore v. Coates cited by the majority.